IN THE UNITED STATES DISTRICT COURT

FOR DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER 323-942-7389, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 310260647658913 | Case No. 18-MJ-6197-MPK<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, **James Picardi**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number 323-942-7389, (the "Target Cellular Device"), which is described in Attachment A.

2. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), and have been since 2002. I am currently assigned to the Boston Office of the New England Field Division. I have served as a police officer in Revere, Massachusetts, since 1991. I was promoted to the rank of Sergeant in 1996 and served as a narcotics detective for four years. In September 2002, I was sworn in as Task Force Officer and began working with the DEA on that date through the present date. During my time as a Police Officer and Task Force Officer, I have participated in numerous investigations and arrests involving infractions of state laws, including Massachusetts General Laws, Chapter 94C, and federal laws, including Title 21, United

States Code, Sections 841(a)(1) and 846. Some of the investigations and arrests were in cooperation with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"); the Federal Bureau of Investigation ("FBI"); Massachusetts State Police; local police agencies; and DEA Task Force II. In addition to my training with the Massachusetts Criminal Training Council Recruit Academy and yearly in-service training, I have participated in courses aimed at educating police investigators in drug interdiction, detection, and recognition, as well as case presentation. I have participated in an accredited 80-hour narcotics investigation course sponsored and taught by the DEA and have attended numerous narcotics related training classes, including DEA training classes pertaining to telephonic and internet communications. During my training and through my experience, I have observed marijuana, cocaine, heroin, and other narcotics. I am aware of the prices commonly charged on the street for these substances, the methods of packaging them, and the jargon used in their distribution. I have received training in field-testing controlled substances. I have participated in nearly all aspects of narcotics-trafficking investigations at the state and federal levels, including but not limited to, the arrests of narcotics offenders after lengthy investigations that involved investigative techniques, such as undercover purchases of narcotics by police officers and/or federal agents and controlled purchases of narcotics by other sources. I have been involved in multiple Title III electronic-surveillance investigations during my tenure at DEA. I have debriefed numerous defendants, informants, and witnesses who had personal knowledge about narcotics-trafficking activities and the operation of narcotics-trafficking organizations. I have sworn out numerous affidavits in support of search warrants, arrest warrants, and other court applications.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      One purpose of applying for this warrant is to determine with precision the Target Cellular Device's location.  However, there is reason to believe the Target Cellular Device is currently located somewhere within this district because, as further set forth below, 1) the Target Cellular Device was used to facilitate the delivery of drugs in Revere on the evening of March 23, 2018 to Danielle Cafarelli, who died of a drug overdose early the next morning; 2) the Target Cellular Device is believed to be used by Isneldy Grullon, a resident of Massachusetts, and his associates; 3) a user of the Target Cellular Device sent a text to Danielle CAFARELLI's cellular telephone on April 14, 2018, stating that it was from Grullon's cousin, and that the "phone" was "back on so when you need anything don't hesitate to text/call." Based on my training and experience, I understood this to mean that Grullon and/or his cousin were ready to again distribute drugs to Cafararelli.  Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by Isneldy Grullon and other persons known and unknown. There is also probable cause to believe that the location of the Target Cellular Device will constitute evidence of those criminal violations, including leading to the identification of individuals who are engaged in the commission of these offenses and identifying locations where the target engages in criminal activity.

6.      Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41.  See 18 U.S.C. §§ 3121-3127.  This warrant therefore includes all the information required to be included in a pen register order.  See 18 U.S.C. § 3123(b)(1).

7.      **Fatal Overdose.**  On March 24, 2018, at approximately 3:33 am, the Revere Police Department responded to 13 Vivien Street in Revere, Massachusetts, and found Danielle Cafarelli unresponsive.  Cafarelli was transported to the Cambridge Health Alliance in Everett, where she was pronounced dead less than an hour later.  The responding officers found drug paraphernalia in the apartment, and observed on the table beside Cafarelli's bed two clear plastic baggies containing a light brown powder.  One baggie was open; the other was knotted.

8.      **Connection to Target Cellular Device.**  Officers seized and were able to access Cafarelli's cellular telephone.  Among other things, her cell phone contained recent text messages to telephone number 323-942-7389 (the Target Cellular Device), which was stored in under the name "Joel."  The thread from March 23, 2018 (the night before Cafarelli died) read as follows:

| | | |
|---|---|---|
| CAFARELLI: | 2:00 pm | You on today? |
| CAFARELLI: | 2:15 pm | Can I see you later if all works out |
| | | Sorry my phone is so messed up it was really hard to hear you |
| CAFARELLI: | 7:51 pm | But I have the $50 now |
| | 7:58 pm | Would you be able to come in when you get here because my dad's home and I don't want to come outside I will if I have to but I think it would look better if you came in. |
| JOEL: | 10:41 pm | I'm here |

CAFARELLI: 10:41 pm        Ok come in

9.  **Based on my training and experience, I believe Cafarelli obtained heroin and/or fentanyl from "Joel," the user of the Target Cellular Device that night.** In particular, I believe Cafarelli sent her drug supplier a text message to ask if drugs were available ("You on today?"); that she then had a telephone conversation with him that was interrupted or limited by technical or coverage problems, which she then described in follow up messages ("Can I see you later if all works out;" and "Sorry my phone is so messed up it was really hard to hear you."); that at 7:51 pm, Cafarelli notified "Joel" she was ready to purchase the drugs ("But I have the $50 now"); that shortly thereafter she instructed Joel to come inside her residence to deliver the drugs ("…it would look better if you came in"); that at 10:41 pm, "Joel" arrived at 13 Vivien Street ("I'm here"); and that less than an hour later Cafarelli used the drugs "Joel" delivered ("I just sniffed lol I had to").

10. **Subscriber Records for the Target Cellular Device.** In April, I obtained the telephone subscriber and toll records from T-Mobile for 323-942-7389 (the Target Cellular Device), which I then reviewed for the period February 24, 2018 through April 9, 2018. There is no listed subscriber name or address for the account. Toll analysis shows that the Target Cellular Device contacted Cafarelli's cellular telephone 47 times between March 16, 2018 and March 24, 2018.

11. **Cafarelli's Associate Identified "Joel" to be Isneldy Grullon.** On April 5, 2018, investigators interviewed an associate of Cafarelli and conducted an audio-recorded photo lineup. The associate, who is not identified here in order to protect the identity of the associate due to fear of Grullon and his associates, identified a photograph of Isneldy GRULLON (DOB xx/xx/1991) in the photo lineup as the person the associate knows to be the drug dealer "Joel." The associate stated that the associate and Cafarelli obtained heroin in the recent past from "Joel," in exchange for

money and/or sex.  The showing of the photo array was audio recorded.

12.     **Subsequent Text Messages.**  On April 5, 2018, at approximately 12:15 pm, a user of the Target Cellular Device sent a text message to Cafarelli's cellular telephone that read, "hey." An undercover detective used Cafarelli's cellular telephone to reply to the message: "Hey how are you doing it's been awhile." There was no reply.  On April 14, 2018, a user of the Target Cellular Device sent three text messages to Cafarelli's cellular telephone that read, "hey, hun;" "call me;" and "this is Joels cousin phone back on so when you need anything don't hesitate to text/call." Based on my training and experience, I believe an associate of Grullon was attempting to reach out to Cafarelli in order to sell her more heroin.

13.     **Determining the location of the Target Cellular Device will further the investigation.**  The location of the Target Cellular Device will constitute evidence of conspiracy to distribute and distribution of drugs, by revealing, or helping to reveal, the people in addition to Grullon who are using the Target Cellular Device, the people who are Grullon's associates, suppliers, and customers, and the locations where the targets engage in their drug trafficking activity.

14.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.  When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

15.     To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device.

Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

16. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

18.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance.  This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  There is reasonable necessity for the use of the technique described above, for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

19.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

20.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

21.     A search warrant may not be legally necessary to compel the investigative technique described herein.  Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

_____
**James Picardi**
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
On: __April 25, 2018_____

_____
M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 323-942-7389, with International Mobile Subscriber Identity number 310260647658913, whose wireless provider is T-Mobile, with no listed subscriber.

## **ATTACHMENT B**

Pursuant to an investigation of Isneldy Grullon and his associates for violations of Title 21, United States Code, Sections 841(a)(1) and 846, this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night.  This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property.  The Court finds reasonable necessity for the use of the technique authorized above.  *See* 18 U.S.C. § 3103a(b)(2).